## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
DANIEL J. BARTOLUCCI and                            )
EDWARD UNGVARSKY,                                   )
*On behalf of themselves and all*                   )
*others similarly situated,*                        )
                                                    )
                    Plaintiffs,                     )
                                                    )
         v.                                         )    Civil Action No. 17-00097 (ABJ)
                                                    )
1-800 CONTACTS, INC.,                               )
                                                    )
                    Defendant.                      )
_____             )
                                                    )
ELIZABETH HENRY,                                    )
*On behalf of herself and all others*              )
*similarly situated,*                               )
                                                    )
                    Plaintiff,                      )
                                                    )
         v.                                         )    Civil Action No. 17-00117 (ABJ)
                                                    )
1-800 CONTACTS, INC., *et al.*                      )
                                                    )
                    Defendants.                     )
_____             )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Daniel Bartolucci and Edward Ungvarsky sued defendant 1-800 Contacts, Inc.

("1-800 Contacts"), alleging that it agreed, and conspired to agree, with other online retailers

selling contact lenses nationwide to restrain trade in violation of the Sherman Antitrust Act and

the District of Columbia's consumer protection laws.  Compl. ¶¶ 2, 5 [No. 1:17-cv-00097,

Dkt. # 1] ("*Bartolucci* Compl.").  Plaintiff Elizabeth Henry filed a separate lawsuit against 1-800

Contacts, as well as Vision Direct, Inc. ("Vision Direct"), and fifteen unnamed "John Doe" co-

conspirators, alleging violations of the Sherman Act, and separate violations of New York state

law.  Compl. ¶¶ 1, 39 [No. 1:17-cv-00117, Dkt. # 1] ("*Henry* Compl.").  Each plaintiff seeks to represent a nationwide class of similarly-situated consumers for its federal claims, and a separate sub-class of similarly-situated consumers for their state law claims.  *Bartolucci* Compl. ¶¶ 41, 55; *Henry* Compl. ¶¶ 70–71.

Defendant 1-800 Contacts has filed a consolidated motion to transfer both cases under 28 U.S.C. § 1404(a).  It asks the Court to transfer the cases to the U.S. District Court for the District of Utah, where 1-800 Contacts is headquartered, and where two similar cases against the company are already pending, having already been transferred there from California.[1]  Def. 1-800 Contacts, Inc.'s Mot. to Transfer Venue to the District of Utah [No. 1:17-cv-00097, Dkt. # 8] ("Def.'s Mot."); 1-800 Contacts' Mem. of P. & A. in Supp. of Def.'s Mot. at 3–4 [No. 1:17-cv-00097, Dkt. # 8-1] ("Def.'s. Mem.").[2]  Plaintiffs filed a joint memorandum in opposition to the motion to transfer, arguing that transfer is not warranted, and that pretrial consolidation under 28 U.S.C. § 1407, which they have already sought before the Judicial Panel on Multidistrict Litigation ("JPML"), is more appropriate.  Pls.' Joint Mem. of P. & A. in Opp. to Def.'s Mot. [No. 1:17-cv-00097, Dkt. # 17] ("Pls.' Opp.") at 1–3.[3]

For the reasons stated below, the Court will grant the motion to transfer.

---

[1]    *See Thompson v. 1-800 Contacts, Inc.*, No. 2:16-cv-1183 (D. Utah) (transferred from the Southern District of California on November 21, 2016); *Stillings v. 1-800 Contacts, Inc.*, No. 2:16-cv-1257 (D. Utah) (transferred from the Northern District of California on December 8, 2016).

[2]    The motion to transfer was also filed in the *Henry* action.  Def.'s Mot. [No. 1:17-cv-00117, Dkt. # 6]; Def.'s Mem. [No. 1:17-cv-00117, Dkt. # 6-1].  Any citation to defendant's motion or memorandum refers to both docket entries, unless otherwise noted.

[3]    Plaintiffs filed their joint memorandum in the *Henry* action as well.  *See* Pls.' Opp. [No. 1:17-cv-00117, Dkt. # 17].  Any citation to plaintiffs' joint memorandum refers to both docket entries, unless otherwise noted.

## BACKGROUND

1-800 Contacts is a corporation headquartered in Draper, Utah, and defendant Vision Direct is a corporation headquartered in Bellevue, Washington.  *Bartolucci* Compl. ¶ 10; *Henry* Compl. ¶¶ 20–21.  The corporate defendants engage in the sale of contact lenses over the internet.  *Bartolucci* Compl. ¶¶ 2, 4; *Henry* Compl. ¶ 1.  The lawsuits are nationwide class actions alleging that 1-800 Contacts entered into agreements with its competitors to resolve actual or threatened trademark litigation, and that these agreements, which are alleged to be in restraint of trade in violation of the Sherman Act and state law, result in higher prices for consumers.

The lawsuits pending before the Court are two of seven similar antitrust actions that have been filed against defendant 1-800 Contacts and several of its competitors arising out of the same set of facts and circumstances.[4]  The following four lawsuits were filed before the instant actions were filed in this Court:

- *Stillings v. 1-800 Contacts, Inc.*, No. 2:16-cv-01257 (D. Utah) was filed in the Northern District of California on September 21, 2016, and transferred to the District of Utah on December 8, 2016.  Plaintiff is a resident of Contra Costa County, California, who seeks to represent a nationwide class of consumers that was allegedly overcharged for the contact lenses sold by 1-800 Contacts, in violation of the Section 1 of the Sherman Act.

- *Thompson, et al. v. 1-800 Contacts, Inc., et al.*, No. 2:16-cv-01183 (D. Utah) was filed in the Southern District of California on October 13, 2016, and transferred to the District of Utah on November 21, 2016.  Plaintiffs, both residents of California, filed suit against 1-800 Contacts, Vision Direct, and fifteen unnamed co-conspirators under Section 1 of the Sherman Act and under California state law.  They seek to represent a nationwide class for their federal antitrust claims, and a separate sub-class of consumers in California for their state law claims.

---

4        In addition to the cases filed in federal district courts across the country, there is also an ongoing administrative proceeding, which was initiated on August 8, 2016 by the Federal Trade Commission, against 1-800 Contacts and its competitors.  *See In re 1-800 Contacts, Inc.*, No. 9372, 2017 WL 511541 (F.T.C. Feb. 1, 2017).

- *Bean v. 1-800 Contacts, Inc.*, No. 2:16-cv-05726 (E.D. Pa.) was filed on November 2, 2016. Plaintiff, a resident of Pennsylvania, seeks to represent a nationwide class of consumers for her claims under Sections 1 and 2 of the Sherman Act, and a separate sub-class of consumers in Pennsylvania for her state law claims.

- *Zimmerman, et al. v. 1-800 Contacts, Inc.*, No. 2:16-cv-06417 (E.D. Pa.) was filed on December 13, 2016. Plaintiffs, residents of Pennsylvania, New York, New Jersey, Texas, and California, seek to represent a nationwide class of consumers for their claims under Section 1 of the Sherman Act, and each plaintiff also seeks to represent a separate sub-class of consumers in their respective home states for violations of those states' laws.

The two lawsuits filed in this district largely mirror the actions that were pending when they were filed.

- The *Bartolucci* complaint was filed on January 13, 2017. *Bartolucci* Compl. Plaintiffs are residents of Washington, D.C. who purchased contact lenses from 1-800 Contacts through its website at allegedly anticompetitive prices. *Id.* ¶¶ 8–9. They filed suit against 1-800 Contacts alleging violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and violations of the District of Columbia Consumer Protections Procedures Act, D.C. Code § 28-3901, *et seq*. *Id.* ¶¶ 87–105. Plaintiffs seek to represent a nationwide class of consumers for their federal antitrust claims, and a separate sub-class of consumers in the District of Columbia for their D.C. law claims. *Id.* ¶¶ 2, 5–9.

- On January 18, 2017, plaintiff Henry, a resident of New York, filed suit in this Court against 1-800 Contacts, Vision Direct, and fifteen unnamed co-conspirators under Sections 1, 2, and 3 of the Sherman Act, and under New York General Business Law, N.Y. Gen. Bus. Law § 349(a). *Henry* Compl. ¶¶ 1, 10–28. Plaintiff Henry also seeks to represent a nationwide class of consumers for her federal antitrust claims, in addition to a separate sub-class of similarly-situated consumers in the state of New York for her state law claim. *Id.* ¶¶ 71–72.

One more case was filed after the two cases were filed here:

- *Nance v. 1-800 Contacts, Inc.*, No. 4:17-cv-00178 (E.D. Ark.) was filed on March 22, 2017. Plaintiff, a resident of Arkansas, seeks to represent a nationwide class for his claim under Section 1 of the Sherman Act, and a separate sub-class of consumers in Arkansas for his state law claim.

Plaintiffs allege that 1-800 Contacts was facing growing competition from other online retailers of contact lenses and asserted its trademark rights over phrases such as "1-800 Contacts." *Bartolucci* Compl. ¶¶ 3, 18–20; *Henry* Compl. ¶¶ 6–7.  This effort began in 2004 with cease-and-desist letters, followed by lawsuits filed against competitors aimed at preventing them from advertising their products in response to queries on popular search engines such as Google and Bing. *Bartolucci* Compl. ¶¶ 18–20; *Henry* Compl. ¶¶ 6–7.  Plaintiffs allege that 1-800 Contacts settled "baseless" trademark lawsuits it had filed against its competitors, and that those settlements amounted to "unlawful agreements under which [the competitors] agreed not to place bids for online advertising that would run in response to specified internet search queries, including any search containing the term '1-800 Contacts.'" *Bartolucci* Compl. ¶ 5; *see Henry* Compl. ¶ 5.  All of the lawsuits in question were filed in the District of Utah, and only one of the defendants litigated the matter to judgment;[5] the rest settled.  *See Bartolucci* Compl. ¶ 18; *Henry* Compl. ¶ 7; Def.'s Mem. at 13.

Plaintiffs allege that when 1-800 Contacts and its competitors settled those disputes, and the competitors agreed to refrain from advertising their products in response to search queries containing terms such as "1-800 Contacts," they also agreed to set up a system of "negative keywords." *Bartolucci* Compl. ¶¶ 3, 18–20; *Henry* Compl. ¶ 7.  These would direct particular search engines not to display the competitors' products when a potential customer initiated such a search query, even when that query would otherwise have produced results directing potential customers to the competitors' webpages.  *Bartolucci* Compl. ¶¶ 18–20; *Henry* Compl. ¶ 7.  Plaintiffs claim that because "1-800 Contacts did not want to lower its prices to compete" with its

---

5       Only one competitor, Lens.com, refused to enter into an agreement and proceeded to litigate 1-800 Contacts' trademark claim in Utah.  *See 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229 (10th Cir. 2013).

"lower priced online competitors," it created a scheme that "artificially fixed, raised, maintained and/or stabilized the prices for contact lenses" by manipulating the placement of online advertisements.  *Henry* Compl. ¶¶ 85, 110; *Bartolucci* Compl. ¶¶ 16, 88.  And they claim that these agreements reduced competition in the market.  *See Bartolucci* Compl. ¶ 35; *Henry* Compl. ¶¶ 39–40.

Shortly after the plaintiffs in the *Bartolucci* matter filed their lawsuit, they asked the Judicial Panel for Multidistrict Litigation to consolidate all of the pending cases in the District of Columbia under 28 U.S.C. § 1407.  *In re: 1-800 Contacts Antitrust Litig.*, MDL Case No. 2770, Dkt. # 1 (J.P.M.L. Jan. 24, 2017).  The other named plaintiffs voiced their support for the motion for pretrial consolidation on February 15, 2017.  *See In re: 1-800 Contacts Antitrust Litig.*, MDL Case No. 2770, Dkt. ## 20, 21, 23, 24 (J.P.M.L. Feb. 15, 2017) (filings in support of pretrial consolidation by plaintiffs Stillings, Thompson, Zimmerman, Bean, and Henry).

On January 31, 2017, defendant 1-800 Contacts moved under 28 U.S.C. § 1404(a) to transfer the *Bartolucci* and *Henry* actions to the District of Utah.[6]  Def.'s Mot.  Plaintiffs jointly opposed the motion to transfer, Pls.' Opp., and defendant filed a reply in support of its motion on

---

6       On February 1, 2017, plaintiffs in both actions moved jointly to stay all proceedings in this Court pending the JPML's decision on Bartolucci's section 1407 motion to consolidate.  Joint Mot. for Temporary Stay of All Proceedings Pending Ruling on Mot. for Transfer & Coordination by the JPML [No. 1:17-cv-00097, Dkt. # 10] ("Pls.' Joint Mot. to Stay"); Pls.' Joint Mot. to Stay [No. 1:17-cv-00117, Dkt. # 8].  Defendant 1-800 Contacts opposed the motion to stay the next day in both cases.  Def. 1-800 Contacts' Opp. to Pls.' Joint Mot. to Stay [No. 1:17-cv-00097, Dkt. # 12] ("Def.'s Opp. to Stay"); Def.'s Opp. to Stay [No. 1:17-cv-00117, Dkt. # 9].  The Court granted that motion in part on February 3, 2017, staying all proceedings other than defendant's section 1404(a) motion to transfer.  Min. Order (Feb. 3, 2017).

March 6, 2017.  1-800 Contacts' Reply in Supp. of Def.'s Mot. [No. 1:17-cv-00097, Dkt. # 19]

("Def.'s Reply"); Def.'s Reply [No. 1:17-cv-00117, Dkt. # 20].[7]

## STANDARD OF REVIEW

"For the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought . . . ."

28 U.S.C. § 1404(a).  The Court has "broad discretion" to transfer a case under section 1404.  *In*

*re Scott*, 709 F.2d 717, 719 (D.C. Cir. 1983).  The defendant, as the moving party, bears the burden

of establishing that transfer is proper.  *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d

124, 127 (D.D.C. 2001).  The decision to transfer requires an "individualized, case-by-case

consideration of convenience and fairness."  *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

A court is not deprived of its discretion to transfer cases during the pendency of a section

1407 motion for pretrial consolidation.  *See* J.P.M.L. Rule 2.1(d) ("The pendency of a motion

. . . before the Panel pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial

proceedings in any pending federal district court action and does not limit the pretrial jurisdiction

of that court.").  Indeed, the JPML itself has noted that "where a reasonable prospect exists that

resolution of Section 1404 motions could eliminate the multidistrict character of a litigation,

---

7    Defendant Vision Direct has yet to be served or enter an appearance in the *Henry* action, and has not joined 1-800 Contacts' motion.  The Court has broad discretion to order a transfer and may even do so *sua sponte*.  *In re Scott*, 709 F.2d 717, 721 (D.C. Cir. 1983).  Moreover, the Court notes that Vision Direct has not opposed transferring similar claims to the District of Utah.  *See* Joint Mot. to Transfer Venue to District of Utah, *Thompson v. 1-800 Contacts, Inc.*, No. 3:16-cv-02552 (S.D. Cal.) [Dkt. # 20] at 2 ("Plaintiffs . . . and Defendant[] 1-800 Contacts, Inc. . . . submit this joint motion for an order transferring this action to the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1404(a).  Defendant Vision Direct, Inc. has confirmed that it also does not oppose this request.").  Thus, the Court will proceed to rule on the motion to transfer despite the lack of input from Vision Direct.

transfer under Section 1404 is preferable to centralization." *In re: Gerber Probiotic Prod. Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1380 (J.P.M.L. 2012).

The threshold question under section 1404(a) is whether the action "might have been brought" in the transferee district. 28 U.S.C. § 1404(a). This limitation imposes two prerequisites to transferability: (1) "venue must be proper in the transferee district;" and (2) "the defendants must be subject to the process of the federal court in the transferee district at the time the action was originally filed." *Relf v. Gasch*, 511 F.2d 804, 806–07 (D.C. Cir. 1975).

Venue in a civil case is proper in:

(1)     a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2)     a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3)     if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). The statute further provides that a corporate defendant is deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). And under the second prerequisite, "a defendant is subject to process in the transferee court if the defendant would have been subject to personal jurisdiction in the transferee court at the time the suit was brought." *Levin v. Majestik Surface Corp.*, 654 F. Supp. 2d 12, 15 (D.D.C. 2009), citing *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960).

In addition, Section 12 of the Clayton Antitrust Act specifically provides that "[a]ny suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the

judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business." 15 U.S.C. § 22.

If the threshold requirement of venue has been met, the Court must then go on to balance case-specific private interest and public interest factors to determine whether transfer is appropriate. *See Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 12 (D.D.C. 2000). Private interest considerations include:

> (1)     the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants;
>
> (2)     the defendants' choice of forum;
>
> (3)     whether the claim arose elsewhere;
>
> (4)     the convenience of the parties;
>
> (5)     the convenience of the witnesses of the plaintiff and defendant but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and
>
> (6)     the ease of access to sources of proof.

*Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996). And the public interest considerations include:

> (1) the transferee's familiarity with the governing laws;
>
> (2) the relative congestion of the calendars of the potential transferee and transferor courts; and
>
> (3)  the local interest in deciding local controversies at home.

*Id.*

## ANALYSIS

Defendant maintains that both lawsuits could have been brought in the District of Utah, and plaintiffs do not dispute this contention. *See* Def.'s Mem. at 13; Pls.' Opp.; Def.'s Reply at

5.[8]  Therefore, the Court need only examine and balance the private and public interest factors. *See Lentz v. Eli Lilly & Co*, 464 F. Supp. 2d 35, 36 (D.D.C. 2006) (determining on a motion to transfer that only the second inquiry requires examination where it is undisputed that the action could have been brought in the transferee district).

## I.  The private interest factors weigh in favor of transferring both actions.

### A.  Plaintiffs' Choice of Forum

The D.C. Circuit has held that "a plaintiff's choice of forum will rarely be disturbed . . . unless the balance of convenience is strongly in favor of the defendant." *Gross v. Owen*, 221 F.2d 94, 95 (D.C. Cir. 1955).  The plaintiff's choice of forum is often accorded deference "where the plaintiffs have chosen their home forum and many of the relevant events occurred there." *New Hope Power Co. v. U.S. Army Corps of Eng'rs*, 724 F. Supp. 2d 90, 95 (D.D.C. 2010), citing *Great Socialist People's Libyan Arab Jamahiriya v. Miski*, 946 F. Supp. 2d 137, 144–45 (D.D.C. 2007). But an "insubstantial factual nexus between the case and the plaintiff's chosen forum" will weaken the deference given to plaintiff's forum.  *Id.*  Additionally, "in a class action suit in which the plaintiffs propose to represent a class of potential plaintiffs who reside throughout the country, the plaintiffs' choice of forum deserves less weight than it is typically given." *Berenson v. Nat'l Fin. Servs., LLC*, 319 F. Supp. 2d 1, 3 (D.D.C. 2004).

---

8      The Court is also independently satisfied that both actions could have been brought in the District of Utah.  Venue is proper in the District of Utah under 28 U.S.C. § 1391 and Section 12 of the Clayton Act because 1-800 Contacts maintains its principal place of business in Draper, Utah, defendant Vision Direct markets and sells its products nationwide, plaintiffs allege that 1-800 Contacts "engineered" a "hub-and-spoke" conspiracy that would have emanated from its headquarters in Utah, and a substantial part of the events giving rise to plaintiffs' claims took place in Utah.  *See Bartolucci* Compl. ¶¶ 10, 18–22; *Henry* Compl. ¶¶ 21, 56.  Moreover, each corporate defendant would be subject to process in the District of Utah because they are each subject to personal jurisdiction there due to their establishment of business contacts in Utah by affirmatively selling and marketing their products.  *See Bartolucci* Compl. ¶ 13; *Henry* Compl. ¶ 12; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473–76 (1985).

Plaintiff Henry is a resident of New York, so this is not her home forum.  And the *Henry* complaint alleges no other connection to the District of Columbia, other than the fact that defendant does business here – as it does throughout the country – over the internet.  *Henry* Compl. ¶¶ 12–13, 18.  So her choice of forum carries little weight.

Plaintiffs Bartolucci and Ungvarsky are residents of the District of Columbia, but like plaintiff Henry, they claim that they purchased their contact lenses directly from the 1-800 Contacts website.  *Bartolucci* Compl. ¶¶ 8–9; *Henry* Compl. ¶ 19.  Plaintiffs Bartolucci and Ungvarsky argue that they suffered their injury – paying an inflated price – in Washington, D.C. *Bartolucci* Compl. ¶¶ 8–9; *see also* Pls.' Opp. at 12.  Even if this connection to the District of Columbia requires the Court to accord some deference to the Bartolucci plaintiffs' choice of forum, that deference is not entitled to great weight.

First, the District of Columbia has "no *meaningful* nexus to the controversy and the parties."  *Greater Yellowstone Coal.*, 180 F. Supp. 2d at 128 (emphasis added).  The controversy involves alleged restraints on trade that took place across the country, and neither defendant has any connection to the District of Columbia other than the fact that both conduct nationwide business.  At a minimum, the District of Columbia's connection to the controversy and to the defendants is identical to that of any other jurisdiction.

Additionally, both lawsuits seek to represent a nationwide class of consumers, which serves to reduce the deference typically given to a plaintiff's choice of forum.  *Berenson*, 319 F. Supp. 2d at 3.  Plaintiffs acknowledge this proposition in their pleading.  *See* Pls.' Opp. at 13.

Because there is an insubstantial factual nexus to the District of Columbia in both cases, and because both cases involve nationwide class actions, plaintiffs' choice of forum is entitled to limited deference.  Therefore, the first factor is neutral, or at best, favors plaintiffs only slightly.

### B.      Defendants' Choice of Forum

Defendants' choice of forum is not ordinarily entitled to deference unless defendants can "establish that the added convenience and justice of litigating in its chosen forum overcomes the deference ordinarily given to the plaintiff's choice." *Sheffer v. Novartis Pharms. Corp.*, 873 F. Supp. 2d 371, 376 (D.D.C. 2012).  But a defendant's choice of forum will be accorded some weight when there are parallel proceedings in the proposed district.  *See Fed. Hous. Fin. Agency v. First Tenn. Bank Nat'l Ass'n*, 856 F. Supp. 2d. 186, 193 (D.D.C. 2012).

Here, two similar cases are currently pending in the District of Utah, and transfer of the *Bartolucci* and *Henry* actions will serve the interests of judicial economy.  *See generally Van Dusen*, 376 U.S. at 616 (observing that the purpose of section 1404(a) transfer "is to prevent the waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense"), quoting *Cont'l Grain Co. v. Barge F.B.L.–585*, 364 U.S. 19, 26–27 (1960).  So, this factor weighs in favor of transfer.

### C.      Whether the Claim Arose Elsewhere

Transfer is favored when "the material events that form the factual predicate of the plaintiff's claim did not occur in the plaintiff's chosen forum." *Sheffer*, 873 F. Supp. 2d at 376, citing *Intrepid Potash-N.M., LLC v. U.S. Dep't of Interior*, 669 F. Supp. 2d 88, 95 (D.D.C. 2009).  Plaintiffs do not contend that any meaningful portion of the events leading to this case occurred in the District of Columbia.  Rather, the complaints focus on arrangements concerning the sale and marketing of contact lenses across the country online.

Defendant maintains that the material events underlying these two cases – the corporate decisions to initiate both the cease and desist letters and the lawsuits, the settlement of any litigation or threatened litigation, and the implementation of the settlement agreements alleged to

12

be in restraint of trade – all took place in Utah.  Def.'s Mem. at 18–20; *see Berenson*, 319 F. Supp. 2d at 4 (concluding that a claim arose where the corporate decisions were made).  While plaintiffs argue that defendant overstates the relevance of Utah to their antitrust actions, they do specifically allege that the litigation in Utah was "baseless," *Bartolucci* Compl. ¶¶ 5, 73; *Henry* Compl. ¶¶ 6, 118, and they confirm that their claims are based on some of the private settlement agreements 1-800 Contacts later negotiated with its competitors.  Pls.' Opp. at 9–11.

Thus, to the extent any of the events forming the factual predicate of these nationwide class actions happened in any particular state, they happened in Utah, and plaintiffs point to nothing that would distinguish the District of Columbia from any other location in the country.  Therefore, this factor weighs in favor of transfer.

### D.      Convenience of the Parties

No party thoroughly addresses this factor, and instead the parties focus more on the convenience of the witnesses, which will be discussed below.  But for the convenience of the parties factor to weigh in favor of transfer, "litigating in the transferee district must not merely shift inconvenience to the non-moving party; instead, it should lead to increased convenience overall." *Mazzarino v. Prudential Ins. Co. of Am.*, 955 F. Supp. 2d 24, 31 (D.D.C. 2013), citing *U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*, 771 F. Supp. 2d 42, 48 (D.D.C. 2011) and *Kotan v. Pizza Outlet, Inc.*, 400 F. Supp. 2d 44, 50 (D.D.C. 2005).

Plaintiffs Bartolucci and Ungvarsky both reside in the District of Columbia, so they would be required to travel to the District of Utah if the case is transferred.  However, because plaintiff Henry resides in New York, she will have to travel regardless of transfer, so her inconvenience does not weigh heavily in the equation.  Defendant 1-800 Contacts is headquartered in Utah, and Vision Direct is headquartered in Washington State, so many of their officers and employees are

13

located in those places.  *See* Def.'s Mem. at 8–9.  As the actions are currently filed in the District of Columbia, the inconvenience of traveling currently rests on defendants.  So any transfer to the District of Utah would merely shift the inconvenience from defendants to plaintiffs.

Therefore, this factor is neutral.

E.       **Convenience of Witnesses**

"The convenience of the witnesses has been described as 'the most critical factor'" on a motion to transfer.  *Sheffer*, 873 F. Supp. 2d at 377, quoting *Pyrocap Int'l Corp. v. Ford Motor Co.*, 259 F. Supp. 2d 92, 97 (D.D.C. 2003).  But the convenience of the witnesses is only considered "to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Bederson v. United States*, 756 F. Supp. 2d 38, 49 (D.D.C. 2010), quoting *Mohammadi v. Scharfen*, 609 F. Supp. 2d 14, 18 (D.D.C. 2009).  "Without evidence to the contrary, courts assume that witnesses will voluntarily appear."  *Id.*, quoting *Mahoney v. Eli Lilly & Co.*, 545 F. Supp. 2d 123, 127 (D.D.C. 2008).

To favor transfer, the moving party must specify "what a nonresident witness will testify to, the importance of the testimony to the issues in the case, and whether that witness is willing to travel to a foreign jurisdiction."  *Sheffer*, 873 F. Supp. 2d at 378, quoting *Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 33 (D.D.C. 2002).  Defendant has not addressed all three prongs of that showing; it simply argues that because the majority of the witnesses are located in Utah, they will be unavailable for trial and outside of the District of Columbia court's subpoena power.  *See* Def.'s Mem. at 18.  This is not a sufficient showing to weigh in favor of transfer, so this factor remains neutral.

### F.      Ease of Access to the Sources of Proof

There is little in either brief about this factor.  While access to proof is still relevant in a motion to transfer inquiry, modern technology has made "the location of documents [] much less important" to a determination of convenience than it once was.  *Sheffer*, 873 F. Supp. 2d at 378, citing *Thayer/Patricof*, 196 F. Supp. 2d at 36.

Plaintiffs note that in the FTC action, 1-800 Contacts built its case "in large part, on evidence held and witnesses residing *outside* of Utah," Pls.' Opp. at 14, and they add that "relevant documents . . . are almost certainly being produced [by defendant] in the District of Columbia for the FTC action."  *Id.* at 16.  But there is nothing in the record to suggest that it would be easier to gain access to evidence in either place.

So this factor is neutral, but taken as a whole, the private interest factors favor transfer.

## II.      The public interest factors weigh in favor of transferring both actions.

### A.      Transferees' Familiarity with the Governing Laws

With regard to plaintiffs' federal law claims, "[a]ll federal courts are presumed to be equally familiar with the law governing federal statutory claims."  *Fed. Hous. Fin. Agency*, 856 F. Supp. 2d. at 194, quoting *Miller v. Insulation Contractors, Inc.*, 608 F. Supp. 2d 97, 103 (D.D.C. 2009).

And with regard to plaintiffs' claims predicated on the laws of the District of Columbia and the state of New York, the addition of these claims does not militate against transfer.  First of all, plaintiffs do not even mention their state law claims while discussing this factor in their brief.  *See* Pls.' Opp. at 17.  And while this Court may be more frequently called upon to apply D.C. law than are the judges in the District of Utah, neither court has a particular connection to the New York statutes relied upon in the *Henry* case, and in any event, all federal courts are more

15

than capable of adjudicating state law claims from a variety of jurisdictions. *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 584 (2013) ("[F]ederal judges routinely apply the law of a State other than the State in which they sit.").

Thus, the first public interest factor is neutral.

**B.      Relative Congestion of the Courts**

When considering the congestion of the courts, the Court compares "the districts' median times from filing to disposition or trial." *Sheffer*, 873 F. Supp. 2d at 380, citing *Pueblo v. Nat'l Indian Gaming Comm'n*, 731 F. Supp. 2d 36, 40 n.2 (D.D.C. 2010).

Plaintiffs claim that the District of Columbia has a shorter median time from filing to disposition than the District of Utah: 7.8 months compared to 10.4 months. Pls.' Opp. at 17. But defendant claims that the District of Utah has a shorter median time from filing to trial: 34.2 months compared to 41.8 months. Def.'s Reply at 10–11. Because these statistics essentially cancel one another out, this factor is neutral. *See Sheffer*, 873 F. Supp. 2d at 380–81 (finding that when one court has a quicker time to trial, and the other court has a quicker time to disposition, the congestion of the courts "factor is in equipoise" and is "not very helpful").

**C.      Local Interests in Deciding Local Controversies**

The third and final public interest factor is the local interest in deciding local controversies at home. Plaintiffs contend that because plaintiffs Bartolucci and Ungvarsky reside in the District of Columbia, the District of Columbia has a local interest in these cases. Pls.' Opp. at 17. Obviously, that does nothing to tie this Court to plaintiff Henry's case, and given the District's tangential connection to one of the complaints, the Court finds that it is Utah that has the greater interest in adjudicating this controversy. Defendant is headquartered there, and many of the

underlying events giving rise to plaintiffs' claims – including the filing and resolution of the trademark actions – took place there.  *See* Def.'s Reply at 11.

Further, even if two plaintiffs do live in the District of Columbia, plaintiffs themselves style these lawsuits as national class actions arising out of interstate commerce and the internet. "When national significance attaches to a controversy, local interest can sometimes be diminished." *Sheffer*, 873 F. Supp. 2d at 381.  Because there is national interest in the enforcement of federal antitrust laws, no single jurisdiction can truly claim a uniquely particularized interest in them.  Therefore, any interest the District of Columbia may have, and even Utah's local interest in adjudicating these cases, is diminished due to the national significance of these cases.  So this factor weighs in favor of transfer, but it is not a particularly weighty factor under these circumstances.

## III.    Additional public interest factors unique to these two actions favor transfer.

The circumstances surrounding the specific claims at issue call for the discussion of three additional public interest factors.  First, since two of the seven antitrust actions filed against these defendants have already been transferred to the District of Utah, the Court will consider "the presence of closely related litigation" in the transferee forum in determining whether transfer is appropriate.  *Barham v. UBS Fin. Servs.*, 496 F. Supp. 2d 174, 180 (D.D.C. 2007).  Second, since the plaintiffs in each of the seven actions filed against 1-800 Contacts to date seek to represent a nationwide class for their federal antitrust law claims,[9] the Court will consider the potential impact of duplicative class actions proceeding simultaneously in multiple judicial districts.  And third,

---

9       The parties in the two actions before the Court agree that the seven class actions currently filed against 1-800 Contacts all raise virtually identical claims.  *See* Def.'s Mem. at 5–7; Pls.' Opp. at 2; *see also* Pls.' Joint Notice of Filing [Dkt. # 20] (informing the Court of the filing of a related case in the Eastern District of Arkansas, which "shares common questions of fact and law with each of the cases currently subject" to the currently pending motion before the JPML).

since plaintiff Bartolucci has moved for pretrial consolidation of the antitrust actions as an MDL, the Court will consider the relative efficiency of pretrial consolidation under section 1407 and complete transfer under section 1404(a) in determining whether the public interest weighs in favor of transfer.

### A.    The Existence of Related Actions in the Transferee District

Courts in this district have consistently held that "[t]he interests of justice are better served when a case is transferred to the district where related actions are pending." *Martin–Trigona v. Meister*, 668 F. Supp. 1, 3 (D.D.C. 1987), citing *Waites v. First Energy Leasing Corp.*, 605 F. Supp. 219, 223 (N.D. Ill. 1985) and *Islamic Republic of Iran v. Boeing Co.*, 447 F. Supp. 142, 145 (D.D.C. 1979); *see also Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 56 (D.D.C. 2000) (finding that conserving judicial resources and facilitating a final resolution of related litigation "strongly favor[s] transfer"), quoting *Harris v. Republic Airlines*, 699 F. Supp. 961, 962 (D.D.C. 1988). Where, as here, the facts and the legal issues in the transferor's and transferee's cases overlap, transfer is strongly in the public interest. *Reiffin*, 104 F. Supp. 2d. at 56.

### B.    Inefficiencies and Inequities of Simultaneous Class-actions Proceeding in Multiple Judicial Districts

The fact that the *Bartolucci* and *Henry* plaintiffs, as well as the plaintiffs in the *Thompson* and *Stillings* actions that have already been transferred to the District of Utah, all seek to represent a nationwide class of similarly-situated plaintiffs is another factor that weighs in favor of transfer to a single jurisdiction under section 1404(a). *See* Wright & Miller, 7B Fed. Prac. & Proc. Civ. § 1798.1 (3d Ed.) ("Clearly, a single nationwide class action seems to be the best means of achieving judicial economy."); *id.* ("[T]hese competing and duplicative actions not only generate unnecessary litigation and duplicative fees, but also they may result in delay, pose complicated problems of judicial coordination in some instances, [and] increase the risk of disparate verdicts

18

raising serious questions of fairness . . . .").  Under those circumstances, transfer to the jurisdiction where the earlier cases are pending is appropriate.

Further, given the complex and novel nature of the legal issues in these cases, *1-800 Contacts, Inc. v. Lens.com, Inc.*, No. 2:07-CV-591, 2012 WL 113812, at *3 (D. Utah Jan. 13, 2012), (noting the "emerging and changing nature of Internet competition" in the market for contact lenses), *aff'd*, 722 F.3d 1229 (10th Cir. 2013), and the fact that a ruling could have an impact on a nationwide market for an item that millions of consumers depend upon each day, the public interest is served by avoiding the possibility of overlapping and possibly inconsistent rulings.

Also, commentators have noted that if nationwide class actions proceed simultaneously to the merits in different judicial districts, the result would lead to legal uncertainty as well as possible procedural and substantive unfairness to the defendant due to the limits of collateral estoppel in the class-action context.  *See* Rhonda Wasserman, *Dueling Class Actions*, 80 B.U. L. Rev. 461, 486–87 (2000) ("[T]he protections and limitations built into [the] preclusion doctrine – designed to protect non-parties and to ensure that only issues actually litigated are precluded – [instead] provide litigants with opportunities to 'repackage' class actions rejected by one court and file them in another court.").

### C.    Section 1404(a) Transfer and Pretrial Consolidation Under Section 1407

Plaintiffs argue that pretrial consolidation before the JPML would be a more efficient means of solving these problems than transferring their cases to the District of Utah.  But their position is not supported by the applicable authority.

The JPML has stated that "centralization under Section 1407 should be the last solution after considered review of all other options."  *In re Best Buy Co., Cal. Song-Beverly Credit Card*

*Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011).  The JPML frequently cites the availability of a section 1404(a) transfer when denying a motion for consolidation.  *See, e.g.*, *In re Michaels Stores, Inc., Pin Pad Litig.*, 844 F. Supp. 2d 1368, 1368–69 (J.P.M.L. 2012); *Gerber Probiotic*, 899 F. Supp. 2d at 1379 ("We previously have denied centralization where there is a 'reasonable prospect' that the resolution of Section 1404 motions could eliminate the multidistrict character of the actions before us."), quoting *In re Republic of W. Ins. Coverage Litig.*, 206 F. Supp. 2d 1364, 1365 (J.P.M.L. 2002).

This is because the advantages of section 1407 consolidation formally end at the pretrial stage:  section 1407 "obligates the Panel to remand any pending case to its originating court when, at the latest, those pretrial proceedings have run their course."  *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34 (1998).  *Lexecon* rights can be waived, but in the absence of a waiver, a section 1407 is not permanent "as it is under Section 1404."  *In re Best Buy*, 804 F. Supp. 2d at 1378.  Here, given the similar nature and the small number of pending cases, they could be efficiently consolidated once transferred, and the consolidation would then be permanent.

Moreover, if the cases are consolidated for pretrial purposes under an MDL, the parties could still face the possibility of multiple, overlapping, and inconsistent class-action verdicts after the cases have been returned to their respective courts.  Thus, the public interest in judicial economy would be well served by a section 1404(a) transfer.

So, after reviewing all of the public interest factors, the Court concludes that they weigh in favor of transfer.

## CONCLUSION

For the reasons stated above, the Court finds that the private and public interest factors weigh in favor of transfer.  Accordingly, defendant's motion to transfer both cases to the District of Utah is **GRANTED**.

**SO ORDERED**.

AMY BERMAN JACKSON
United States District Judge

DATE:  March 28, 2017